IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| In re Ashley Oaks Development Corporation<br>d/b/a Ashley Oaks Development, Inc.<br><br>Debtor. | )<br>)<br>)  Bankruptcy Case No: 10-04801-jw<br>)<br>)<br>) |

**ORDER GRANTING CREDITOR FIRST PALMETTO SAVINGS
BANK, FSB'S MOTION TO DISMISS**

THIS MATTER COMES BEFORE THE COURT on Creditor First Palmetto Savings Bank, FSB's ("First Palmetto") motion to dismiss the above-captioned case pursuant 11 U.S.C. § 1112[1] or, in the alternative, to convert the case to a case under Chapter 7 of the United States Bankruptcy Code ("Motion"). The United States Trustee ("UST") filed a response to First Palmetto's Motion wherein it requested that the case be converted to a Chapter 7. Debtor Ashley Oaks Development Corporation d/b/a Ashley Oaks Development, Inc. ("Ashley Oaks") filed an objection to the Motion. This is a core proceeding under 28 U.S.C. § 157(b)(2) and this Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 157(a). Based upon First Palmetto's Motion, the filings in this case, including the joint stipulation of facts submitted by the parties prior to the hearing, applicable statutory and case law, the evidence presented at the hearing, and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.[2]

**FINDINGS OF FACT**

1.    Ashley Oaks is a corporation organized and existing under the laws of the State of South Carolina whose sole shareholder is Michael D. Shelley.

---

[1] Further references to the Bankruptcy Code shall be by section number only.
[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

2. Heretofore, Ashley Oaks was engaged in the development and sale of residential real estate, primarily in the Blythewood, South Carolina area.

3. Ashley Oaks filed its voluntary petition for protection under Chapter 11 of the United States Bankruptcy Code on July 23, 2010.

4. Ashley Oaks is the owner of two rental properties in Blythewood, South Carolina,[3] which are subject to the mortgage liens of First Palmetto. Ashley Oaks also owns 40 lots and 132.88 acres known as Ashley Oaks Subdivision, which are subject to the mortgage liens of First Palmetto.

5. The evidence further shows that postpetition taxes have not been paid on at least one parcel owned by Ashley Oaks and subject to First Palmetto's liens.

6. Ashley Oaks listed two additional residential developments in its schedules and statements. Willow Lakes Subdivision, which is subject to the mortgage lien of First Citizens Bank & Trust Company, Inc. ("First Citizens"), and Abney Hills Subdivision, which is subject to the mortgage lien of Security Federal Bank ("Security Federal"). Since the filing of the bankruptcy case, First Citizens and Security Federal have been granted relief from the automatic stay.

7. Ashley Oaks' Disclosure Statement and Proposed Plan were due January 3, 2011 pursuant to SC LBR 3016-1 and were ultimately filed on February 26, 2011.

8. In its Proposed Plan, Ashley Oaks proposes to transfer the 40 existing developed lots located in Ashley Oaks subdivision to First Palmetto in full satisfaction of its debt and intends to fund its plan through future development, the sale of lots, rental payments from real estate located at 1105 and 1131 Blythewood Road, and contributions from its sole shareholder, Michael D. Shelley.

---

[3] The two rental properties are located at 1105 Blythewood Rd. and 1131 Blythewood Rd., respectively.

9. Specifically, the Proposed Plan provides for monthly payments to Creditors as follows:

| **Creditor** | **Payment** |
|---|---|
| First Palmetto | $1,617.23 |
| First Citizens Bank | $1,529.94[4] |
| Unsecured Creditors | To be paid from sales proceeds |
| TOTAL | $3,147.17 |

10. The parties stipulated that First Palmetto's total debt secured by the three mortgages 40 lots and 132.88 acres is $1,683,664.45.

11. As demonstrated by an appraisal submitted at the hearing, the value of the 40 lots is insufficient to satisfy Ashley Oaks' obligations to First Palmetto.

12. Further, the evidence submitted indicates that First Citizens has not waived its claim to a deficiency judgment in its foreclosure action.

13. Mr. Shelley has, based upon the evidence submitted, two judgments against him which total over $150,000.00. He further testified that he has at least two other judgments against him.

14. Ashley Oaks' income and expenses as reflected in the monthly operating reports are as follows:

| Month | Income | Expenses | Net Income |
|---|---|---|---|
| July 2010 | $950.00 | $3,471.99 | ($2,521.99) |
| August 2010 | $1,400.00 | $4,809.44 | ($3,409.44) |
| September 2010 | $1,400.00 | $4,600.32 | ($3,200.32) |

---

[4] The Proposed Plan was filed prior to the entry of the order granting First Citizens' motion for relief from the automatic stay.

| | | | |
|---|---|---|---|
| October 2010 | $46,400.00 | $50,544.34 | ($4,144.34) |
| November 2010 | $1,400.00 | $3,122.44 | ($1,722.44) |
| December 2010 | $1,400.00 | $4,784.31 | ($3,384.31) |
| January 2011 | $46,115.00 | $51,833.04 | ($2,718.04) |

## **CONCLUSIONS OF LAW**

For a motion under § 1112(b), the movant bears the initial burden to establish cause of dismissal or conversion. In re Landmark Atlantic Hess Farm, LLC, No. 10-24656-DK, 2011 WL 831724 (Bankr. D.Md. Mar. 3, 2011).

Section 1112 was recently clarified by "technical amendments" effective December 22, 2010.[5] Prior to this amendment, the statute read as follows:

> (1) Except as provided in paragraph (2) of this subsection … on request of a party in interest, and after notice and a hearing, *absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of the creditors and the estate*, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate for cause, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

After the "technical amendments," § 1112(b)(1) now provides as follows:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of the creditors and the estate. (emphasis added).

---

[5] See Bankruptcy Technical Corrections Act of 2010, Pub.L. 111-327 Stat. 3557 (Dec. 22, 2010). The changes apply to cases pending and thereafter filed. Landmark Hess, 2011 WL 831724 at n. 14.

4

Under § 1112(b)(1) prior to the recent amendments, once a movant established a *prima facie* showing of cause, the burden then shifted to the respondent to establish that dismissal or conversion was not in the best interests of creditors and the estate based upon unusual circumstances.[6] Id. Such unusual circumstances could not be solely facts that are common to Chapter 11 cases generally. Id. (citing In re Syndor, 431 B.R. 584 (Bankr.D.Md. 2010)).[7]

This "technical amendment" changed the statute by eliminating "absent unusual circumstances specifically identified by the court that establish the requested conversion or dismissal is not in the best interests of the creditors and the estate," making such a defense no longer applicable in subsection (b)(1). Therefore, upon establishment of cause, the court shall dismiss or convert the case, or appoint a chapter 11 trustee, unless specific circumstances set forth in subsections (b)(2) or (c) apply. Landmark Hess, at *3. The debtor has the burden of establishing the requirements set forth in § 1112(b)(2). 11 U.S.C. § 1112(b)(2); DCNC North Carolina I, LLC v. Wachovia Bank, N.A., Nos. 09-3775, 09-3776, 2009 WL 3209728 (Bankr. E.D.Pa. 2009).

---

[6] Alternatively, the prior version of § 1112(b)(1) could be read to allow a court to consider the presentation of unusual circumstances before making a finding of a cause. Under such a reading, the recent technical amendments would indicate a more significant change in the application of the statute.

[7] Prior to the technical amendments, some courts have held that § 1112(b)(1) and (2) provided two separate exceptions to the requirement that a court shall convert or dismiss a case for cause. A debtor could avoid dismissal or conversion under § 1112(b)(1) by establishing unusual circumstances or, in the absence of unusual circumstances, by meeting the requirements of § 1112(b)(2)(A) and (B). See In re Forest Grove, LLC, C/A No. 10-05542-DD (Bankr. D.S.C. Mar. 3, 2011) (discussing the exceptions to dismissal or conversion without applying the technical amendments); Collier on Bankruptcy ¶ 1112.05[1] and [2] (citing In re Orbit Petroleum, Inc., 395 B.R. 145, 147 (Bankr. D.N.M. 2008)).

Likewise, § 1112(b)(2) was clarified by the "technical amendments." Section 1112(b)(2) now provides as follows:

> The Court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing is not in the best interests of the creditors and the estate, **and** the debtor or any other party interest establishes that -
>
> > (A) there is reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; **and**
> >
> > (B) the grounds for granting such relief include an act or omission of the debtor other than paragraph (4)(A) –
> >
> > > (I) for which there exists a reasonable justification for the act or omission; **and**
> > >
> > > (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2)(emphasis added).

Therefore, the defense to a motion to dismiss or convert appears more limited as it is now found solely in § 1112(b)(2). <u>Landmark Hess</u>, at *3. Prior to the amendment, a court was not required to dismiss or convert a case even when the movant established cause if the court specifically identified unusual circumstances as to why dismissal or conversion was not in the best interest of the estate. After the amendment, the defense of unusual circumstances can only be invoked where the debtor or other party opposing the motion also establishes that: (1) there is a reasonable likelihood that a plan will be confirmed within the timeframes expressed in § 1112(b)(2)(A), and (2) the grounds for conversion or dismissal include an act or omission other than the cause set forth in § 1112(b)(4)(A) for which there is a reasonable justification for the act

or omission and such act or omission will be cured within a reasonable period of time fixed by the court. Id.

A non-exhaustive list of the factors to be weighed by the court in determining cause is set forth in § 1112(b)(4). The relevant factors to this Motion are:

> (A) substantial or continuing loss to or diminution of estate and the absence of a reasonable likelihood of rehabilitation;
>
> (I) failure to timely pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order of relief;
>
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of court.

First Palmetto has met its burden of establishing cause exists for a dismissal of the above-captioned case. First, this case was filed on July 5, 2010. Neither a disclosure statement nor a proposed plan was timely filed within 180 days after the filing of the petition as is required under SC LBR 3016-1(a), and therefore, cause exists under § 1112(b)(4)(J).

Second, Ashley Oaks has failed to pay the real property taxes on at least one (1) parcel subject to First Palmetto's mortgages, TMS # 15000-01-02, which is cause for dismissal and/or conversion under 11 U.S.C § 1112(b)(4)(I).

Third, First Palmetto has established cause under § 1112(b)(4)(A). In order to establish cause under § 1112(b)(4)(A), a movant must demonstrate both a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. In re Whitney Lake, LLC, C/A No. 08-057299-JW, slip op. at 4 (Bankr. D.S.C. May 5, 2009). The first component requires the court to determine whether a debtor has suffered a negative cash flow or declining asset values. Id. at *5; Landmark Hess, 2011 WL 831724 at *4.

The estate has suffered a continuing diminution of value throughout the course of this case as evidenced by its continual negative cash flow. As reflected in its Schedules, Ashley Oaks had, as of the date of the filing of the Schedules, cash available in the amount of $50,389.67. The July 2010 Operating Report indicated the total cash available was $47,876.16. According to the Monthly Operating Reports filed by Ashley Oaks thereafter, the cash available for operations has continually declined each month. While Ashley Oaks asserts future lot sales may generate a profit, the record not only demonstrates limited lot sales throughout the case, but limited prospects for lot sales in the future.

The Court also finds the second prong of § 1112(b)(4)(A)—absence of a reasonable likelihood of rehabilitation—has also been met. "Rehabilitation is not synonymous with reorganization and the determination is not whether a debtor can confirm a plan, but whether the debtor has sufficient business prospects" for the benefit of creditors and the estate. See Landmark Atlantic, at *5; In re Park, 436 B.R. 811, 817 (Bankr. W.D.Va 2010) (stating rehabilitation requires the prospect of re-establishing a business at minimum). Thus, rehabilitation depends upon establishing a "cash flow from which current obligations can be satisfied." Whitney Lake, slip op., at 5 (quoting In re Schriock Const. Inc., 167 B.R. 569, 576 (Bankr. D.N.D. 1994)). Ashley Oaks' ability to rehabilitate itself and re-establish sufficient business prospects depends upon selling its current lots and continuing to develop its property. However, over the eight months Ashley Oaks has been in Chapter 11, it has failed to establish an ability to generate sufficient funds from the sale of lots to meet its current obligations. Few lots have sold throughout the course of the bankruptcy case and Ashley Oaks has not demonstrated a sufficient cash flow to fund any future development of the property it owns. Furthermore,

Ashley Oaks has not demonstrated a separate or sufficient source of capital to operate and fund its future obligations, including reasonable debt service.  Thus, the Court finds both elements have been met to establish cause under § 1112(b)(4)(A).

Having found that cause exists for dismissal or conversion, the burden then falls to Ashley Oaks to demonstrate that unusual circumstances exist so that conversion or dismissal is not in the best interests of the creditors or estate as prescribed under § 1112(b)(2).  Section 1112(b)(2) is written in the conjunctive and thus requires not only that the court identify unusual circumstances, but also that a debtor establish (1) a reasonable likelihood that a plan will be confirmed within a reasonable time and (2) the grounds for converting or dismissing the case include an act or omission other than that expressed in § 1112(b)(4)(A) for which there exists a reasonable justification and which can be cured within a reasonable time.  At the hearing on the Motion, Ashley Oaks relied upon the Proposed Plan and Disclosure Statement that were filed on February 26, 2011. The Proposed Plan is dependent upon several factors which make its confirmation unlikely within a reasonable period of time.

First, the Proposed Plan is dependent upon contributions by Ashley Oaks' sole shareholder.  Mr. Shelley testified that he is supplementing his social security benefits by renovating one home for which he is paid $3,200.00 per month.  By his own testimony, Mr. Shelley does not have a contractor's license and is operating under one of his sons' license. Further, Mr. Shelley testified that he has no other jobs currently scheduled.  Additionally, Mr. Shelley has at least two judgments against him personally which were admitted as evidence at the hearing and he testified that there are two other judgments against him.  Therefore, his ability to fund the plan is doubtful.

Second, the Proposed Plan is further based upon Ashley Oaks continuing to develop, market, and sell lots. There was no evidence presented by Ashley Oaks that this is a feasible option within a reasonable period of time. It is uncontradicted that the residential lot and home sale markets are depressed with no signs of an immediate turnaround. Specifically, the record is devoid of any evidence that Ashley Oaks has access to resources necessary for the continued development and sale of property over time.

Third, there is no evidence to convince the Court that Ashley Oaks' opinion as to the value of its property or subdivision is reliable or should prevail. While Mr. Shelley testified that he thought the value of each of the 40 lots was an average of $45,000.00, there is no evidence to convince the Court that any of these lots will sell for that amount. On the contrary, the evidence presented by First Palmetto in the form of an appraisal indicates otherwise. Likewise, Mr. Shelley's testimony that, once developed, the lots in the 132.88 acre tract would be worth an average of $55,000.00 per lot is also speculative considering the present market conditions and that no evidence was presented as to how Ashley Oaks is going to fund the development of that acreage.

Based upon the foregoing, Ashley Oaks has failed to meet its burden of demonstrating that there is a reasonable likelihood of confirmation. For these same reasons and after considering the evidence presented and the record of this case, the Court does not find any unusual circumstances to demonstrate that conversion or dismissal is not in the best interest of the estate.[8] Based upon finding that there are no unusual circumstances and no reasonable

---

[8] Some courts have also held that if cause is established under § 1112(b)(4)(A), then the provisions of § 1112(b)(2) do not apply, generally finding that an absence of a reasonable likelihood of rehabilitation necessarily precludes a reasonable likelihood of confirmation. See Landmark Hess, 2011WL 831724 at *5; In re Park, 436 B.R. 811, 818 (Bankr. W.D.Va. 2010) (citing In re Quail Farm, LLC, 2010 WL 1849867 at *2 (Bankr. N.D.W.Va. 2010)); In re Rubio, 2011 WL 124458 at *3 (Bankr. E.D.N.Y. Jan. 13, 2011). However, the undersigned believes otherwise, and therefore addresses subsection (b)(2) herein. See also In re Wallace, 2010 WL 378351, at *6 n. 23 (Bankr. D.Id.

likelihood of confirmation, the Court finds it unnecessary to formally conclude whether the failure to file the plan timely or the failure to pay postpetition taxes were reasonably justifiable or curable pursuant to § 1112(b)(2)(B).[9]

While First Palmetto argued for dismissal, the UST requested the case be converted to a Chapter 7 case in lieu of dismissal. However, conversion does not appear warranted considering the present real estate market and the costs, time, and effort associated the appointment and acclimation of a trustee. Therefore, it is in the best interests of the creditors and the estate to grant First Palmetto's Motion to Dismiss.

THEREFORE, IT IS HEREBY ORDERED that the Chapter 11 case be and hereby is dismissed.

**IT IS SO ORDERED.**

**FILED BY THE COURT**
**03/29/2011**



*signature: John E. Waites*

Chief US Bankruptcy Judge
District of South Carolina

Entered: 03/29/2011

---

2010) (finding that an argument could be made that § 1112(b)(2)(A) could apply even when cause is found under §1112(b)(4)(A)).

[9] Counsel indicated without elaboration or evidence that the failure to timely file the plan and disclosure statement was a mistake and that postpetition taxes that are due and not paid could be paid in the immediate future.